## Commonwealth v. Chalfant, Appellant.

Argued October 2, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Paul Reilly,* for appellant.

*Franklin E. Barr,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, and *J. Herman Kahn,* for appellee.

OPINION BY RENO, J., December 13, 1944:

Appellant was summarily convicted before a magistrate under §3 of the Solid Fuels Act of July 19, 1935, P. L. 1356, as amended by the Act of June 24, 1941, P. L. 152, §1, and the Act of May 27, 1943, P. L. 684, §1, 76 PS §344, of having delivered 4100 pounds of coke unaccompanied by a weighmaster's certificate in the form established under the statute. An appeal was allowed and after a trial de novo appellant was adjudged guilty and sentenced to pay a fine and the costs

of prosecution. His appeal to this court raises only the question of the proper interpretation of the act.

The facts of the transaction giving rise to the prosecution are not in dispute. On February 19, 1944, Lemuel Kirkland drove his truck into appellant's retail coal yard and ordered a load of coke. Appellant's employes weighed and loaded 4100 pounds of coke on Kirkland's truck while it was in the yard and gave him an invoice on the billhead of appellant's firm showing the weight of the coke and the price to be charged. The invoice was not on the form prescribed for weighmasters' certificates by the Secretary of Internal Affairs and the information set forth did not fulfill the requirements of the statute. Kirkland paid for the coke and drove his truck out of the yard where he was observed and stopped by an inspector for the Bureau of Weights and Measures. The inspector required Kirkland to return to the yard where the coke was reweighed and it was found that the weight figure appearing on the invoice was correct, but the prosecution was instituted when it was discovered that he had not been given an official weighmaster's certificate.

The pertinent language of the Act is: "No person, upon the sale or purchase of solid fuel, shall transport, deliver, or cause to be delivered, or to be started out for delivery, any solid fuel in a lot or lots in amounts of exceeding one hundred (100) pounds without each lot, in each separate compartment of any vehicle or vehicle and trailer, being accompanied by a weighmaster's certificate for each lot issued by a licensed weighmaster of the Commonwealth of Pennsylvania."

Appellant's main contention is that the offense prohibited by the statute is not committed where a buyer purchases solid fuel at the seller's premises and removes it in his own vehicle. The "delivery" contemplated by the act, argues appellant, occurs only when

there has been a physical movement of the fuel by the seller, or by a carrier retained by him, from the seller's place of business to a destination designated by the buyer where he assumes physical dominion over it. We do not understand this to be the true meaning of the statute.

The chameleon word "delivery", as used in the law, conveys a wide variety of meanings, and the proper scope to be accorded it in a given case depends upon the circumstances in which it has been employed. 11 Words and Phrases (Perm. Ed.) 654, et seq.; Cyclopedic Law Dictionary (3rd ed.) 324; I Bouvier's Law Dictionary (Rawle's 3rd rev.) 827, et seq. In determining the meaning of the word as used in the statute here involved, the primary objective is to ascertain and give effect to the intention of the legislature, and when the language employed by it is not free from ambiguity we are at liberty to consider, inter alia, the object sought to be attained by the statute and the consequences of the interpretation advocated by appellant. Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551.

It becomes eminently clear from a reading of the Solid Fuels Act of 1935, and its amendments as a whole, that the legislature was seeking to afford consumers of solid fuels protection against false weights by providing for licensed weighmasters, acting under the supervision of the Commonwealth, whose official responsibility is fixed by the issuance of a certificate. The statutory plan was to give the purchaser a two-fold assurance that he was receiving full measure: an official weighing; and, in addition, a certificate bearing the signature of an individual whose livelihood as a weighmaster depends upon his continuing skill and integrity. To accomplish the intended result, it was made an offense to deliver solid fuel unaccompanied by a certificate, and we think the conduct prohibited by

the act is the transfer of physical control over solid fuel from the seller to the buyer unless a certificate is presented, regardless of the geographical point at which the transfer occurs. It certainly does not appear that the legislature intended to impose greater restrictions upon a dealer who operates trucks or engages hauling services than upon a dealer whose customers transport their fuel in vehicles under their own control. Likewise no sound reason appears why a dealer should be more severely regulated where he transfers fuel to the buyer's custody at a point away from the dealer's yard than when he transfers the fuel to the buyer at his own place of business.

Appellant's interpretation would lead to a result manifestly inconsistent with the beneficent aims of the statute. It is true that a purchaser of fuel who calls for it at the seller's premises has a chance to observe the weighing process, an opportunity not available to one who receives fuel at a distance from the dealer's yard and who must necessarily rely principally upon the integrity of the weighmaster's certificate. But it is also true that the opportunities for inaccuracies or fraud are not eliminated by the mere fact of the purchaser's presence at the time and place where the weighing is done. The process of accurately determining the weight of a load of fuel is one requiring a certain degree of skill even though honestly attempted, and one observing the operation would not necessarily be able to determine whether it had been properly performed. Furthermore, even though the weighing is in fact done by a licensed weighmaster, he assumes no official responsibility as such until the issuance of one of the prescribed certificates. It is plain that the legislature intended to protect the public as much by an official certificate as by competent weighing, and that the factors determining who is to receive the intended protection of the law do not include consideration of

the place where physical control of the fuel changes hands. All persons who become purchasers as a result of a transaction within the scope of the statute are equally subject to the hazard which the act is designed to eliminate.

Appellant argues that the trial judge committed error in refusing to hear witnesses to prove that the term "delivery" was understood in the retail coal business to mean only a transportation of fuel by a seller to the buyer's premises. The court did not refuse to let appellant's witnesses testify, but they were never called, as the judge stated that he understood what their testimony would be. The testimony was irrelevant. In the interpretation of the statute the understanding of the dealers concerning the meaning of its terms cannot govern. The meaning attached to the words *by the legislature* is the lodestar of construction. This meaning we have ascertained and declared. Appellant's understanding, disclosed best by his repeated short weight sales, shown by this record, certainly cannot prevail against the clear legislative mandate.

Judgment affirmed.

KELLER, P. J., and HIRT, J., dissent.