## Charles and Martin Skubic Post License

*Ulric J. McHale*, for appellant.

*Peter Jurchak*, for Pennsylvania Liquor Control Board.

LITTLE, P. J., March 22, 1948.—On July 2, 1947, the Charles and Martin Skubic Post No. 524 of the American Legion, an unincorporated association owning real estate in the Borough of Forest City, Susquehanna County, Pa., filed with the Pennsylvania Liquor Control Board an application for a club liquor license. Pursuant to a hearing held September 30, 1947, at which no protest was made, the board filed an opinion on October 14, 1947, refusing the license principally by reason of the fact that the quota of retail licenses for the Borough of Forest City was already exceeded, the law providing a quota of five retail licenses and there being presently 13 licenses From this

order applicant has appealed. Both applicant's representative and the attorney for the control board were heard in oral argument and the last briefs were filed March 15, 1948.

## Question involved

Does the quota provision of the Liquor License Quota Act of June 24, 1939, P. L. 806, 47 PS §744-1001-2, apply to club licenses?

## Discussion

The Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, and its amendments were not enacted to promote the sale of intoxicating liquors; their enactments were an exercise of the "police power" of the Commonwealth; see Oriole's Liquor License Case, 146 Pa. Superior Ct. 464, 468. The statute empowers the board to grant, issue, suspend, and revoke all licenses and permits, authorized to be issued under the act and the regulations of the board. The board, as a valid exercise of the police power of the Commonwealth, was permitted, subject to the provisions of the act, to make regulations regarding the issuance of licenses and permits, and the conduct, management, sanitation, and equipment of places licensed or included in permits. The intendment of the legislature obviously being to regulate rather than to increase the sale and consumption of intoxicants, for that purpose endowed the board with power to regulate it under the great arm of police power of the Commonwealth. In the absence of clear abuse of discretion or power the rulings of the Liquor Control Board should not be lightly set aside.

The Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, sec. 403, inter alia, provides:

". . . and the applicant seeks a license for a hotel, restaurant or club as defined in this act, the board shall, in the case of a hotel or restaurant, grant and

issue to the applicant a liquor license, and in the case of a club, may in its discretion, issue a license: . . ."

That the legislature intended to vest in the board discretion in the granting of club licenses cannot be denied. Likewise it is equally clear that the legislature in removing the mandatory provision applied to hotel and restaurant applicants who meet the requirements of the act intended to place applications for club licenses in a different class regarding necessity or convenience. The act has been held to be a constitutional delegation of legislative authority: In re Parson-Marnatti Post No. 95, 54 D. & C. 127. We must therefore examine the section of the act here challenged in connection with the opinion of the control board to determine whether the action taken was an arbitrary abuse of the delegated police power.

The Act of June 24, 1939, P. L. 806, limited the number of licenses for the retail sale of liquor, malt or brewed beverages, to be issued by the Pennsylvania Liquor Control Board; defined hotels, and prescribed the accommodations required of hotels in certain municipalities. The title therefore is clear; one of the chief intendments of the legislature was to limit the number of licenses for the retail sale of liquor. Its right and power to do so may not now be successfully challenged. Section 2 provides:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs; but at least one such license may be granted in each municipality, except in municipalities where the electors have voted against the granting of any retail licenses . . . but where such number exceeds the limitation prescribed by this act, no new li-

cense, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

Under section 33 of the Statutory Construction Act of May 28, 1937, P. L. 1019, words and phrases shall be construed according to rules of grammar and according to their common and approved usage. Under section 51 of the same statute the object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. And by section 52 of the same statute it is provided that every law shall be construed, if possible, to give effect to all its provisions. Courts may be guided by the presumption that the legislature does not intend a result that is absurd, impossible or unreasonable, and that the legislature intends the entire statute to be effective and certain. See Spigelmire v. North Braddock School District, 352 Pa. 504-510 and 512. Since the first constitutional amendment of 1864 the title is part of the act; see Pavilonis v. Consol. Home Furniture Co., 352 Pa. 84, 87. Our Superior Court in Commonwealth v. Chalfant, 156 Pa. Superior Ct. 307, at page 310, said:

"In determining the meaning of the word as used in the statute here involved, the primary objective is to ascertain and give effect to the intention of the legislature, and when the language employed by it is not free from ambiguity we are at liberty to consider, inter alia, the object sought to be attained by the statute and the consequence of the interpretation advocated by appellant. Statutory Construction Act of May 28, 1937, P. L. 1019, § 51, 46 PS §551."

". . . a word or phrase, the meaning of which is clear when used in one place, will be construed to mean the same elsewhere in the same section of the act, . . .": Commonwealth v. Stingel, 156 Pa. Superior Ct. 359, 362. All acts in pari materia are to be taken together as if they were one law. Russ v. Commonwealth, 210 Pa. 544, 553. Amendatory statutes, which do not repeal anything in the earlier acts, must be considered as if written into the original act, all of

them construed as one enactment: Commonwealth, to use, v. Barrett, 304 Pa. 13, 16.

Referring again to section 2 of the Act of 1939, supra, in the light of the above decisions we shall first consider the title of the act in connection therewith, to wit: "Limiting the number of licenses for the retail sale of liquor, malt or brewed beverages, or malt and brewed beverages, to be issued by the Pennsylvania Liquor Control Board . . ." We therefore are informed in the title that the legislature intended to limit the number of licenses. This was accomplished in section 2, where by common ordinary language the legislature said that no license should thereafter be granted in excess of one such license of any class for each 1,000 inhabitants or fraction thereof in any municipality, exclusive of licenses granted to hotels and clubs. This language of the act has been the cause of much difference of opinion in the courts of Pennsylvania, but legislative intention is very clearly expressed by the latter portion of the same section where the legislature said: ". . . but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded." Construing the statute as a whole, giving effect to every word in its common and ordinary usage, it plainly shows the legislative intent to limit licenses of all kinds and clubs, except hotel licenses. The object to be attained is to limit the number of licenses according to the population, incidentally to provide easier supervision and to do away with the open saloon. Where the legislature uses words and phrases in the latter part of this section clearly stating that no new license shall be granted except to hotels so long as said limitation is exceeded we believe the legislature intends what it so plainly states—that no new license of any class, except it be a hotel license, may be granted under such a condition. This clearly places clubs within the quota.

Were the legislative intention not clear from the above the State Senate has amply clarified it by enacting the amendment of 1947, Senate Bill No. 814, which was vetoed July 5, 1947, by the Governor on account of its unconstitutionality. In this bill the Senate provided that certain branch posts, camps or chapters of veterans' organizations should be permitted to secure club licenses for a period of 18 months without regard to the quota provisions. There can now be no doubt of the legislative intent to include clubs within the quota.

Sound policies of governmental control must not be overridden by popular demand and courts must look beyond the present to understand the future benefits of modern legislation. The State of Pennsylvania has attempted to set up a method of conducting its biggest business, the sale of intoxicants to its citizens in such a manner as to result in as little damage as possible to them. What the State may prohibit it may regulate. The whole underlying principle is to limit the sale to places under strict supervision and prescribe what kind, when and by whom intoxicating beverages shall be sold. Through its active arm, the Pennsylvania Liquor Control Board, it has made an honest endeavor to properly interpret and enforce simple direct legislation.

It is the duty of the court to interpret, not to rewrite the law. Sound, sensible enforcement may be obtained only when law is interpreted with reason and fidelity. To take from the law here involved a prohibition so clearly expressed would require a rewriting of its provisions. This we may not do. Such redress must be sought from the legislature. It is our conscientious opinion that the legislature intended to include clubs within the quota provisions of section 2 of the Act of June 24, 1939, P. L. 806, and we so hold. The Pennsylvania Liquor Control Board has assigned legal reasons for refusing the license; under these circumstances we may not with propriety charge the board with an abuse of its discretion.