## Spigelmire, Appellant, *v.* North Braddock School District.

Argued March 20, 1945; reargued May 23, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Charles A. Fagan, Jr.,* with him *Leo M. Dillon,* for appellant.

*James A. Nugent,* School Solicitor, for appellee.

*Harrington Adams,* Deputy Attorney General, with him *James H. Duff,* Attorney General, for Department of Public Instruction.

OPINION BY MR. CHIEF JUSTICE MAXEY, June 29, 1945:

This is an appeal from the judgment in favor of the defendant in a mandamus proceeding. Bertha Spigelmire was a holder of a permanent state teacher's certificate issued to her by this Commonwealth on October 1, 1921. She taught in the defendant's ("third class") school district in 1931 and 1932. On December 5, 1937, four of the seven members of the Board of the defendant's school district met informally and discussed the desirability of employing as an additional clerk in the Superintendent's office, one who was certified to teach and would be available to teach in emergencies. They discussed the matter with the plaintiff, and it was understood that she would be available as a teacher if employed as a clerk. On December 6, 1937, the members of the School Board met officially and by affirmative vote of 4 to 3 appointed the plaintiff as a "clerk in the Superintendent's office" at a salary of $125 per month. On the following day she went to work as a clerk and was so employed until she was dismissed on May 15, 1940. On March 11, 1938, the President and Secretary of the defendant Board prepared, executed and delivered to the plaintiff "a professional employe" contract in duplicate in the form prescribed in the Teachers' Tenure Act. It provided that Miss Spigelmire was to teach in the school district. By an error this contract called for the payment of a salary of $125 per *year*, but the parties have agreed that this figure was inserted by mistake and that the plaintiff was to receiver $125 per *month*. The plaintiff signed this contract. On May 15, 1940, by affirmative action of a majority of the directors of the defendant school district the plaintiff was dismissed as a clerk and a man was appointed in her place. The question involved is: Did this plaintiff execute an enforceable contract with the defendant? The case was tried before Judge RICHARDSON without a jury. He found, inter alia, the following facts: "On or about De-

cember 6, 1937, at the meeting of the Board of Directors of the defendant school district, the plaintiff was appointed clerk in the office of the Superintendent of schools at a salary of $125 per month. The minutes of this meeting show a majority of the Board voting in favor of the motion, and also contains the names of the several Directors and their respective votes on the motion.

On the day following her election, to wit, on December 7th, 1937, she entered upon her duties as clerk of the Superintendent of Schools and continuously discharged her duties as such until May 15th, 1940.

On March 11, 1938, a form designated as a "teacher's contract" was executed by the plaintiff and by the president and secretary of the Board of Directors of the defendant school district. This contract was in the form prescribed by the Act of April 6, 1937, P. L. 213, otherwise designated as the "Teachers' Tenure Act." It described the plaintiff as a professional employe and provided that she should teach in defendant school district for an annual compensation of $125. The parties have agreed that this figure was inserted by mistake, and that the salary plaintiff was to receive was in the amount of $125 a month."

In *Com. ex rel. Ricapito v. Bethlehem S. Dist.,* 148 Pa. Superior Ct. 426, 437, 25 A. 2nd 786, President Judge KELLER said: "Two things must enter into the creation of a valid and enforceable teacher's, or professional employe's contract. (1) The appointment must be made and the salary fixed by the affirmative vote of the majority of all the members of the board of school directors, duly recorded on the minutes, showing how each member voted. (2) A contract must be duly signed by the teacher and executed by the president and secretary on behalf of the board, drawn in strict compliance with the action taken by the board and the provisions prescribed by the School Code and its amendments: *Hawkins' Petition,* 129 Pa. Superior Ct. 453, 195 A. 761.

If either of these is lacking, there is no valid, enforceable contract." (Citing many cases.)

Applying the law thus stated to the facts found by the court below, we reach the conclusion that the question involved must be answered in the negative. The contract relied upon was manifestly *not* "drawn in strict compliance with the action taken by the Board." That action related to the plaintiff's election "to the full time position of clerk." The contract signed more than three months later did not relate to the position of clerk. It stipulates that the plaintiff "shall teach in the said school district . . . during the school term or year."

This plaintiff had been certified as a teacher on October 1, 1921, but in the motion adopted by the School Board for her appointment as clerk, there is no indication that she was employed as a clerk because she was a certified teacher. If we adopt plaintiff's view of the law, any person employed by a school district in any full-time capacity is entitled, if he possesses a teacher's certificate, to be employed to teach school.

Section 2 of the Act of April 6, 1937, P. L. 213, 24 P.S. 1126 (1944 Cumulative Pocket Part, p. 100) says, inter alia: "In all school districts, all contracts with professional employes shall be in writing, in duplicate, and shall be executed on behalf of the board of school directors (or board of public education) by the president and secretary and signed by the professional employe." It then says, inter alia: "Said contracts shall contain only the following: 'It is agreed by and between —————————————————, Professional Employe, and the Board of Directors . . . that said Professional Employe shall . . . teach in the said school district for a term of . . . for an annual compensation of . . .'"

In view of the fact that under Section 1 of the Act of April 6, 1937, P. L. 213, the term "professional employe" includes not only "teachers," but also "dental hygienists, . . . school secretaries, . . . school nurses, . . . and any regular full-time employe of a school district who

is duly certified as a teacher," and in view of the fact that "regular full-time employes" of a school district includes attendance officers, clerks, janitors, engineers, librarians and many other workers, and in view of the further fact that it is possible that some of these employes are certified teachers (as is the appellant in the instant case), it is obvious that Section 2 of the Act of 1937 requires judicial interpretation to make it workable. One of the most important duties of the judiciary is to construe statutes. 25 R. C. L., Sec. 214, page 958 says: "The most common occasion for construing statutes is where there is found in a statute some obscurity, ambiguity or other fault of expression; for in that case it is necessary to interpret the law in order to discover the true meaning. And if the legislature has enacted two or more statutes which from their wording appear to be inconsistent, or if the statute under consideration appears to be in conflict with a provision of the constitution, state or federal, there is an ambiguity, for it is always presumed that the legislature did not intend to violate either constitution; it is always presumed it intended its enactments to become valid and enforceable laws. Another occasion for construing a statute is where uncertainty as to its meaning arises not alone from ambiguity of the language employed, but from the fact that giving a literal interpretation to the words will lead to such unreasonable, unjust or absurd consequences as to compel a conviction that they could not have been intended by the legislature."

59 Corpus Juris, Sec. 574, page 970, makes a similar statement, saying "the court will, if possible, place upon the statute a construction which will not result in . . . prejudice to public interest, or absurd consequences, or conclusions not contemplated by the legislature. . . ." In a recent opinion,[1] Mr. Justice JONES,

---

[1] *Block, Exr. v. Mylish et al.,* 351 Pa. 611, 618.

speaking for this court, said: "In interpreting a contract, a construction which would affect an unreasonable or unlawful end is to be avoided."

Appellant would have us clothe the verb "teach" with a meaning that it has never had in any dictionary or in any known judicial opinion. The verb "teach" is a very old word of long established and universally known meaning. Changing the meaning of words is not a legislative function.[2] There is nothing in the Teachers' Tenure Act which indicates that the legislature intended to make the words "teach" and "clerk" synonymous. This court said in the *Teachers' Tenure Act Cases*, 329 Pa. 213, at page 235: "The legislature did not intend those named in the Act as professional employees who were not teachers to contract to teach. . . . If it is necessary to correct the apparent ambiguity another word may be substituted for 'teach' to conform to the duties the employee is to perform."

A contract between a school district and a professional employe to "teach" in the schools of that district cannot bind the professional employe named in that contract to do the work of a clerk, or bind the district to retain that professional employe in the position of clerk to which she was chosen by the Board, but in respect to whose position as *clerk* no contract was ever entered into by the district and that employe. In reply to the argument that "the word 'teach' is but a word in the contract, and as such is open to judicial construction," we *will* construe it by giving it "its plain and obvious meaning," as the canons of judicial construction bid us to do. See 25 R. C. L., Sec. 217, page 962. The Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, Sec. 33, 46 P.S. 533, declares that "words and phrases shall be construed according to rules of grammar and according to their common and approved usage." It is often stated in judicial opinions that where

---

[2] Legislative fiat may not take the place of fact": *W. & R. R. v. Henderson*, 279 U. S. 639, 641.2.

the language used in a statute is clear and unambiguous there is no need for interpretation or construction. The same rule applies to the construction of contracts. Nowhere can a decision be found that "teach" and "clerking" when used in either statutes or contracts are interchangeable terms.

Since Section 2 of the Act of 1937, supra, requires construction, the question is which construction is the least absurd and the most reasonable? First, the construction which declares that the contract prescribed is a form to be followed by the school district and its professional employes in entering into contractual relations, but that the verb "teach" is to be used in the contract only when a professional employe is *engaged* to teach, and if the employe is engaged to clerk or to do any other of the many things full-time employes may do for a school district the contract shall so state. Or, second, the construction now urged upon us, that no matter what service a professional employe is engaged to perform for the school district that employe shall be given a contract to "teach in the said school district." If the latter construction is adopted, any professional employe possessed of such a contract could demand the right to *teach* even though he or she was hired to do something else; and a Board of Directors could order a teacher possessed of such a contract to do any kind of work which *any* "full-time employe" of a school district can legally be called upon to perform.[3]

----

[3] It is true that the Act of April 6, 1937, P. L. 213, Sec. 3, 24 P.S. (1944 Pocket Part) 1161, prohibits the "demotion of any professional employe, either in salary or in type of position," but if *all* professional employes have exactly the same kind of contract in *respect to their employment*, how could it be contended that if a School Board ordered a teacher to act as a school nurse, or as attendance officer, or as a clerk, the order would involve an unlawful demotion? In *Com. ex rel. Wesenberg v. Bethlehem Schl. Dist.*, 148 Pa. Superior Ct. 250, 24 A. 2d 673, it was held that "a refusal by a professional employe to accept an assignment which the board has the power to make may be classed as 'persistent and wilful violation of

The Statutory Construction Act of May 28, 1937, P. L. 1019 (46 P.S. 551), declares (section 51) : "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Section 52 declares that "in ascertaining the intention of the legislature in the enactment of a law, the courts may be guided by the following presumption: (1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable." This court has said that "statutes must be so construed, if possible, that absurdity and mischief may be avoided" (quoting from Chief Judge CARDOZO) : See *Watson v. Witkin et al.*, 343 Pa. 1, 22 A. 2d 17. Justice FIELD, speaking for the United States Supreme Court, said in *U. S. v. Kirby*, 7 Wall. 482, 486, in refusing to interpret an act of Congress *literally* : "All laws should receive a sensible construction."

We decide that the contract set forth in Section 2 of the Act of April 6, 1937, is obviously meant to serve as a form and that when a person is employed to teach school the contract shall say so, but if the "professional employe" is engaged to act as a school secretary, or a dental hygienist, or in any other capacity, the contract shall state what he or she is employed to do.

This court cannot accept the contention that a clerk is protected from removal from office by a contract "to teach" school, when the only authorization she can invoke for that contract is a motion adopted by the School Board that she "be appointed clerk in the office of the Superintendent of Schools." [4] To accept this contention

the school laws,' and a direct violation of his contract, and also amounts to 'persistent negligence.' "

[4] The provisions relating (1) to the dismissal of professional employees, Sec. 2 of the Act of June 20, 1939, P. L. 482, 24 P.S. 1126 (1944 Cumulative Pocket Part, p. 100), and (2) the removal of officers, employees or appointees, Art. 4, Sec. 406 of the Act of May 18, 1911, P. L. 309, 24 P.S. 341, only after hearing, obviously relates to those employees who possess enforceable employment contracts with the school district.

would be giving the School Code a palpably absurd and unreasonable interpretation and would be detrimental to our public school system. In *Commonwealth ex rel. v. Sunbury School District et al.*, 335 Pa. 6, 6 A. 2d 279, this court, speaking through Mr. Justice Drew, said: "All legislation must be construed as intending to favor the public interest; and when it conflicts with private interests, the public interest to be primarily served is the dominating one, not that of the individual: *Walker's Appeal*, 332 Pa. 488, 2 A. 2d 770." We said in *Ehret v. Kulpmont Boro. Sch. Dist.*, 333 Pa. 518, 524, 5 A. 2d 188: "It was not the intention of the legislature [in enacting the Tenure Act] to confer any special privileges or immunities upon professional employees to retain permanently their position and pay regardless of a place to work and pupils to be taught; . . . nor was it the intention of the legislature to disrupt a school district's financial scheme, which must be operated upon a budget limited by the Code, that cannot be exceeded except in the manner provided by the legislature." We also said in the same opinion: "The Code must be construed in the light of the command of Article 10, Sec. 1 of the Constitution to 'provide for the maintenance and support of a thorough and efficient system of public schools.'" It is difficult to imagine anything which would be more detrimental to the efficiency of our public school system than a decision by this court that the School Code requires that *every* "regular full-time employe"[5] of a School District who is "duly certified as a teacher" must be given a contract to "teach school in that district," with the valuable perquisites which under the School

---

[5] The number of persons other than teachers who answer the description of "regular full-time employe" of a school district is illustrated by the number of such employes in the Scranton School District, a school district of the second class. In that district there are 61 janitors, 22 clerks, 9 nurses, 5 attendance officers, 2 dental hygienists and more than a score of other full-time employes.

Code now attach to such a contract, including in many cases qualified "permanent tenure." [6]

What Judge BALDRIGE said in *Parnell v. School Board of Clymer Boro.,* 99 Pa. Sup. Ct. 281, applies here: "The representatives of the Board who executed the contract had the power only that was granted. They were unwarranted in changing the terms of employment as sanctioned by the Board . . . Our appellate courts . . . have uniformly held that notwithstanding the president and secretary may have executed a contract in behalf of the Board of Directors, unless the action of the Board expressly authorized the terms of the contract, it was not enforceable."

The judgment is affirmed; costs to be paid by School District of the Borough of North Braddock.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

By the Act of April 6, 1937, P. L. 213 (24 P. S. § 1126), commonly known as the Teachers' Tenure Act, Section 1205 of the School Code [1] was amended so as to provide that "Each board of school directors . . . in all school districts in this Commonwealth shall . . . enter into contract, in writing, with all professional employes" according to a contract form prescribed by the amendment, and that the contract "shall be executed on behalf of the board of school directors . . . by the president and secretary and signed by the professional employe." At the same time, the Act of 1937 also amended Section 1201 of the School Code by inserting therein the following definition of a professional employe: "The term 'professional employe', as used in this act, shall include

---

[6] The Act of May 18, 1911, P. L. 309, as amended by the Act of July 17, 1919, P. L. 1030, 24 P.S., Sec. 1267, provides, inter alia: "That any person teaching in the public schools of this Commonwealth who has held a professional certificate for not less than ten years may continue to teach the subjects embraced in his certificate in the school district in which he is now teaching without further examination, and his proper superintendent, when requested, shall by indorsement on his present certificate certify to that effect."

[1] Act of May 18, 1911, P. L. 309, as amended.

teachers, supervisors, supervising principals, principals, directors of vocational education, dental hygienists, visiting teachers, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists, school nurses who are certified as teachers and *any regular full-time employe of a school district who is duly certified as a teacher.*" (Emphasis supplied).

It would seem clear, therefore, that when a board of school directors of any district employs a regular full-time employe who is duly certified to teach, such employe at once becomes entitled to receive a contract, in form as prescribed by the Act of 1937, executed on behalf of the board of directors by the president and secretary and signed by the professional employe. That is what the statute plainly directs. No logical reason that I have seen has yet been assigned why the legislative direction should not be obediently administered by the courts.

No one questions that it was within the legislature's competency to provide that a regular full-time employe of a school district, who is a certified teacher, is a "professional employe" for the purposes of the statute or that such "professional employe" shall receive the statutorily prescribed contract and be entitled to its protection. Nor is it necessary for us to find justification for the underlying governmental policy which the legislature, within its unquestioned province, thus sought to subserve. The words of the statute being clear and unmistakable, the legislative intent is manifest. That, plus the fact that the effectuation of the intent lay within the legislature's power, should be justification enough for a court's enforcement of the statute as written. It may be noted in passing, however, that the provision which embraces certified teachers who are employed by school boards in positions other than as teachers at least obviates possible subterfuges for attempted avoidance of the aim and purpose of the statute.

From the undisputed evidence, the learned judge of the court below found the following facts: The plain-

tiff was elected on December 6, 1937, by the board of directors of the defendant school district to the position of clerk to the Superintendent of Schools of the district at a fixed monthly salary. That action was taken at a regular meeting of the board of directors which was attended by the whole number of directors whose votes and action on the question of the plaintiff's employment were duly recorded in the minutes of the board. The plaintiff was a certified teacher, having received her permanent teacher's certificate from the Department of Public Instruction of the State on October 1, 1921. She had served as a teacher in a school district of this Commonwealth, including the defendant school district, for a period of years. She entered upon the discharge of the duties of her position as clerk on December 7, 1937. On March 11, 1938, she was given a written contract which was executed on behalf of the board of directors of the defendant school district by the president and secretary and was signed by the plaintiff. The contract complied strictly with the form prescribed by the Act of 1937. After entering upon her position as clerk, the plaintiff continued to discharge the duties of that office until May 15, 1940, when she was summarily dismissed by the board of directors without any charges having been filed against her and without a hearing. As the learned court below expressly found,—"No charges were ever preferred against plaintiff, nor any reason given by the board for her dismissal."

Why, then, was the plaintiff not entitled to her statutory contract with the school district and to the protection which it was intended to afford? The learned court below based its denial of relief to the plaintiff on the ground that a regular full-time employe of a school district who is certified as a teacher is not a "professional employe" *when employed as a clerk*. While that ruling peremptorily and completely disposed of the question adversely to the plaintiff's contention, its patent invalidity lay in the fact that it flew directly in the face of the

statute whose clear definition of a "professional employe" neither invites nor justifies any such limitation. The action of the learned court below seems to be not other than judicial amendment of the statute.

The majority of this Court hold that the plaintiff's contract with the defendant school district "was manifestly *not* 'drawn in strict compliance with the action taken by the Board'". True enough, the board's "action related to the plaintiff's election 'to the full time position of clerk'" while the contract "stipulates that the plaintiff 'shall teach in the said school district . . .'". But, to fasten upon the word "teach", as employed in the prescribed contract form, and allow it to determine that the board's action must show its employment of a permitted professional employe as a teacher when the employe is not employed nor intended to teach likewise works a rewriting of the statute in disregard of its plainly expressed intent and purpose, which is security of tenure to full-time school district employes who are *qualified* to teach.

Of course, the word "teach", as used in the contract form, is inadequate if arbitrarily restricted to its limited meaning. At most, it is but a word in the contract and, as such, is open to *judicial* construction whose historic office is to give to words the meaning which, if not unreasonable, will most fully effectuate the intent and purpose of the instruments in which they are employed. Certainly, one word in a statutorily prescribed contract form should not be slavishly and unnecessarily stressed to the extent of defeating a major plain intent and express direction of the statute which prescribes the contract. To avoid so doing in the present instance, it would not be unreasonable to hold that "teach", as used in the contract form, means that the contracting "professional employe" shall teach or otherwise perform the duties for which such employe was competently employed by the board of directors. In short, the contract should be read in the light of the character of the services performable

by the various "professional employes" who are embraced within the defined scope of the amended statute; and the thing of paramount importance is as to who qualifies under the statute as entitled to the protection of the prescribed contract. See *Teachers' Tenure Act Cases*, 329 Pa. 213, 235, 197 A. 344.

By refusing to give the word "teach", as used in the prescribed contract, a meaning embracive of the services of the various "professional employes" who are specified by the statute as the contemplated recipients of such contracts, the purposes of the Act are thwarted to a substantial extent.

For example, a dental hygienist of a school district is, by the statute's express terms, a "professional employe" and, accordingly, is entitled to the prescribed contract. Such an employe, however, is not required to be a certified teacher. How, then, could a school board's action in the case of a dental hygienist possibly show employment as a teacher when in fact the permissible employe is not certified to teach. None the less the statute requires that the president and secretary *shall* execute, on behalf of the board of directors, a contract with a dental hygienist (i. e., a "professional employe") on the same prescribed form whose terms call for the employe to "teach". Again, "school nurses, who are certified as teachers", are specifically denominated "professional employes" by the statute and, as such, are entitled to the prescribed contract. On a parity of reasoning, the majority opinion would exclude the prescribed contract form, with its word "teach", from use in the case of a school nurse who is employed to nurse and not to teach. That situation, of itself, demonstrates the immateriality of the implication contained in the statement in the majority opinion that "The School Code nowhere specifically designates clerks as professional employes". Admittedly it doesn't, but it does define a "professional employe" and the crucial inquiry here is not whether the plaintiff is a clerk but whether she qualifies as a "professional employe".

The difficulty, which the majority opinion creates by overemphasizing the word "teach" in the contract, it attempts to meet by saying that "when a professional employe is employed to teach school the contract shall say so, but if the professional employe is engaged to act as a school secretary, or a clerk, or a dental hygienist, the contract shall so state." By what authority may this Court so require? The Act itself provides that the "contracts shall contain *only* the following:". Then follows the prescribed contract form. To invite the many boards of school directors throughout the State (as does the majority opinion) to supplant the verbiage of the form contract and to supply their own was the very thing that the legislature apparently sought to avoid when, by the amendment of 1937, it inserted the word *"only"* with respect to the permissible provisions in the prescribed contract. Why, then, should the word "teach" not be construed so as to give effect to the patent intendment of the Act and the contract? To construe a word of a statute in furtherance of a competent legislative intent is a judicial function, but to ignore the legislature's positive inhibitions is to legislate, which is not within the rightful province of a court. There is no present magic in the word "teach" which requires that substance be sacrificed to form to the extent of rendering the statute inoperative in the case of dental hygienists, school nurses and other regular full-time employes who, while certified as teachers, are not in fact employed to teach.

In the light of the undisputed facts and the law applicable thereto, I fail to perceive any justification for the conclusion that the plaintiff's contract of March 11, 1938, was signed without the direction or approval of the board of directors of the defendant school district. The action of the board in employing the plaintiff as a regular full-time clerk was competent and appropriate to the intendment of the parties; and, as duly recorded on the minutes of the board, it correctly reflected the action so taken. Undeniably, the plaintiff was a certi-

fied teacher. She therefore qualified as a "professional employe" and, as such, was entitled to the prescribed contract. There was nothing further for the board of directors to do. In the circumstances present, the mandatory direction of the statute intervened and thereby it forthwith became the positive duty of the president and secretary to execute, on behalf of the board of directors, the statutorily prescribed contract with the plaintiff. The statute says that, in the case of a "professional employe", the president and secretary *"shall"* so act. To do that, they needed no authorization or direction from the board of directors other than the board's duly recorded employment of the plaintiff (a certified teacher) as a regular full-time employe. And, the contract they were required to execute was prescribed. The statute forbade them to change the form or to use any other. It cannot, therefore, be logically said that the execution of the contract exceeded the action of the board.

In view of the undisputed and readily ascertainable fact that the plaintiff was a certified teacher, any suggestion that the board of directors may not have known that fact when they employed her as a clerk is gratuitous. Actually she had thirteen full years' experience as a teacher in local school districts aside from having acted as a supply teacher in the defendant school district prior to her employment as clerk; and it is undisputed in the testimony that, at least, the majority of the board who voted for the plaintiff's employment as clerk knew that she was a certified teacher and that that qualification was of influence in their action.

There is no need to fear that, by following and applying the Act of 1937 as written, "any person employed by a school district in any full-time capacity is entitled, if he possesses a teacher's certificate, to be employed to teach school." The action of the school board designating the position for which the professional employe is engaged would enter into the construction of the contract whose form is statutorily prescribed to insure

tenure of position. According to the provisions of the contract, it may even be terminated at any time because of the need to decrease the number of professional employes by reason of substantial decrease of pupil population in which event "the board of school directors . . . may suspend the necessary number of professional employes. . . ." The only requirement in such regard is that the employes shall be dismissed in the inverse order of their appointment and that, in case of later reinstatements, they shall be reinstated in the inverse order of their suspension. If the cause for terminating the contract relates to the ability, character or habits of the employe, she is entitled under the Act to written specifications of the charges and a right to a hearing thereon before the board of directors whose duty it is to determine, after a full hearing, whether the charges have been sustained. If the board finds that they have been, it is required to "discharge, demote or refuse to reelect or retain such professional employe". None of the cases cited in the majority opinion touches the question which the instant case poses.

The plaintiff's dismissal was not because the board intended to decrease the professional employes of the school district. The record shows that the very day on which the board voted the plaintiff's dismissal it elected another person to the position of clerk which the plaintiff had filled. So far as cause for the dismissal attaching to the plaintiff is concerned, there is not a single word in the entire record of any criticism of the plaintiff's ability, character or habits. "That no criticism was made of her work is conceded . . ." (Opinion of court below sur plaintiff's exceptions). The conclusion is irresistible that the plaintiff was summarily dismissed to satisfy the whim or caprice of the board of directors and that is what the statute was designed to prevent in the case of "professional employes".

I should reverse the order of the court below and direct that an appropriate writ of mandamus issue.

Mr. Justice PATTERSON joins in this dissent.