## Montrose Borough and Bridgewater Township and the Montrose Borough School District v. Chilletti

*J. Melvin Kelly*, for plaintiff.
*P. T. Lonergan*, for defendant.

LITTLE, P. J., June 2, 1948.—This case comes before the court on petition for declaratory judgment presented by the Joint School District of the Borough of Montrose and the Township of Bridgewater, as plaintiff and Frank Chilletti, a former professional employe of the Montrose Borough District, as defendant. On May 24, 1948, the Montrose School District was permitted to join as plaintiff. The petition in which the parties prayed for a declaration of their respective legal rights was filed on February 2, 1948. The original argument was set for February 17, 1948, but the parties were not ready to proceed and argument was continued to afford counsel more time for examination and preparation. Several arguments have been necessary in the progress of this case, the last being concluded on May 10, 1948.

## Facts of the Case

This defendant, Frank Chilletti, has been in the employ of the Montrose Borough School District for a period of approximately 13 years as a teacher of physical education. His contract was in the form prescribed by law. On June 11, 1947, the Montrose and Bridgewater School Boards formed a joint school district for the purpose of operating a joint four-year high school. At the time of the consolidation Frank Chilletti, then under contract with the Montrose Borough School District, was the only qualified male instructor of physical education employed by either board.

On July 17, 1947, the joint high school district proceeded in the manner provided by statute to hire a staff of necessary professional employes. This defendant was not employed. Plaintiffs gave no written notice of any kind to defendant before terminating his contract.

Physical education is now being taught in the joint high school by Robert Snyder who had been employed by the Montrose Borough School District during the previous year as an instructor of social studies. Robert Snyder had a college provisional certificate to teach mathematics, German and social studies.

At the time of the merger of said school district Robert Snyder was not the holder of a college permanent certificate, college provisional certificate, normal school diploma, normal school certificate, special permanent certificate or permanent state certificate qualifying him for the teaching of physical education.

At the time of the consolidation defendant's official rating in the county superintendent's files was 48. Robert Snyder's rating in the same files was 60.

Plaintiffs contend that the Act of June 20, 1939, P. L. 482, is unconstitutional in that the title thereof fails to indicate that it is the purpose of the act to in any way affect, limit, control or modify or to impose

additional burdens on joint school districts and that the contract of this defendant was terminated when the joint high school district was formed. Defendant contends that he is entitled to a contract with the joint school district to teach physical education in the joint school since he was not suspended in the manner provided by the legislature in section 2(b) of the Act of 1939, P. L. 482.

### Questions Involved

1. Is the amendment to the Teachers' Tenure Act of June 20, 1939, P. L. 482, unconstitutional in that the title thereof fails to indicate that it is the purpose of the act to in any way affect, limit, control or modify, or to impose additional burdens on joint school districts?

2. Where two school districts consolidate to form a joint high school are the contracts of each district with professional employes terminated at the time of the consolidation or must the unnecessary professional employes be suspended in the manner provided in section 2 of the Act of June 20, 1939, P. L. 482?

### Discussion

Plaintiffs urge that under the Act of 1939, P. L. 482, the joint school district is required to employ the teachers or professional employes of each district or at least is bound to dismiss or suspend them only in accordance with the act and that this imposes an additional burden on the joint school district. Plaintiffs further contend that the title to the act furnishes no indication of such an intention to place on them this additional burden and therefore the act is unconstitutional by reason of a defective title.

Considering this question in the first place from the standpoint of the burden imposed, it is difficult to discover any basis for this contention. Under the terms of the Teachers' Tenure Act of April 6, 1937, P. L. 213,

sec. 2 (*a*), it is provided that the only valid causes for termination of a contract in accordance with the provisions of this section shall be immorality, incompetency, intemperance, cruelty, wilful and persistent negligence, mental derangement, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe, or substantial decrease in the number of pupils or students due to natural causes.

Paragraph (*b*) provides that when it becomes necessary to decrease the number of professional employes by reason of substantial decrease of pupil population, the school directors may suspend but only in the inverse order of the appointment of such employes; that such employes shall be reinstated in the inverse order of their suspension and that no new appointment shall be made while any of this class are available.

Paragraph (*c*) provides for public hearings, (*d*) provides that a statement of charges shall if desired be furnished the employe and gives him the right to be present at a hearing with counsel. Paragraph (*e*) gives the board the right of subpœna. Paragraph (*f*) sets forth the manner of action by the board on the charges. Paragraph (*h*) provides for the kind of notice to be then furnished the employe. Paragraph (*i*) provides that unsustained charges are to be expunged from the record, no abatement of salary, etc. Paragraph (*j*) furnishes the employe the privilege of an appeal to the court of common pleas.

The Act of 1939, P. L. 482, here complained of, makes several changes; for instance, in section 2 (*a*) it strikes out the words "wilful and" in defining the grade of negligence required for dismissal and "substantial decrease in the number of pupils or students due to natural causes" as an added ground for dismissal.

In the same section it provides for the maintenance of rating cards as a basis for the determination of

the professional employe's competency, and more complete retirement legislation.

In section 2(*b*) it is provided "Any board of school directors (or board of public education) may suspend the necessary number of professional employees, for the causes hereinafter enumerated." The first cause is practically a reënactment of the provision removed from paragraph (*a*) of section 2 of the Act of 1937 as a cause of termination of contract: "Substantial decrease in pupil enrollment in the School District." The second cause: Curtailment or alteration of the educational program, etc., and the third: "Consolidation of schools whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes".

In the same section the legislature provides that suspensions shall be determined on the basis of efficiency rank, that permanent records of rating shall be kept by school directors. It protects the seniority rights of professional employes, provides for the order of reinstatement of suspended employes, and a more elaborate and complicated system of hearings and appeals in cases of termination of contract by dismissal or suspension.

This act contains no provision making it imperative that the joint school district employ all of the professional employes of any district joining in the consolidation. Under the Act of 1937, supra, it was impossible to dismiss or suspend except for certain well defined reasons and a method of procedure to arrive at termination of services was therein supplied. The Act of 1939, supra, more clearly defines the necessary grounds for suspension, adds the burden of maintaining rating cards and further regulates procedure of suspension.

While the above provisions place some additional burdens on the school districts there can be no substantial contention that the title of the statute fails to place a person of a reasonably inquiring state of mind on notice of the general subject matter of the act.

The title recites that it is an amendment of sections 1201 and 1205 of the School Code of May 18, 1911, P. L. 309 "by defining professional employes, substitutes and temporary employes, and further regulating the employment, dismissal, suspension, demotion and retirement of such employes." It would seem impossible to construct a title more adequately covering the contents of this statute.

It is not necessary that the title be a complete index of the contents, it is sufficient if it fairly gives notice of the subject of the act so as to reasonably lead to an inquiry into the body of the bill. See Mallinger v. Pittsburgh, 316 Pa. 257, 262; Leinbach's Estate, 241 Pa. 32; Lehigh Valley Coal Co. Appeal, 351 Pa. 108, 111; Bethlehem School District Appeal, 351 Pa. 433, 437. In Mallinger v. Pittsburgh, supra, the cause for this constitutional requirement is very clearly set forth as follows:

" 'The purpose of the requirement was to reform a legislative practice which had therefore prevailed of passing enactments under titles which, because of the generality of the words used therein, gave not even a hint of the subject legislated upon, and so far correct the practice that the title of acts thereafter should be so indicative of the subject of the Act as to lead to inquiry and not mislead and entrap.' "

Again in Bethlehem School District Appeal, supra, the Supreme Court at page 437 said:

"This argument of Appellant must fail, for we have consistently held that where a title is sufficiently clear to put a searcher on notice of its contents, such title is adequate."

In Gumpert's Estate, 343 Pa. 405, 407:

"All the Constitution requires is that the title should put persons of a reasonably inquiring state of mind on notice of the general subject matter of the Act. The incidental provisions of the statute need not be enumerated or indexed in the title if they are germane to the legislation as a whole. 'Unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill, the act should not be declared as a violation of the Constitution by reason of its title offending Section 3 of Article III.' "

We start with the presumption that the statute is valid (Williams v. Samuel et al., 332 Pa. 265, 273) and it is incumbent upon us if possible to give an interpretation which will prevent the conflict of the statute with the Constitution (Dauphin County Grand Jury Investigation Proceedings (No. 3), 332 Pa. 358, 365). We may be guided by the presumption that the legislature does not intend to violate the Constitution of the United States or of this Commonwealth (Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 52 (3)), and finally we must give effect to the act unless it clearly appears that the legislation is prohibited by the Constitution (Sharpless v. Mayor of Philadelphia, 21 Pa. 147, 164; Commonwealth ex rel. et al. v. Reeder, 171 Pa. 505, 513; Tranter v. Allegheny County Authority, 316 Pa. 65, 75; Brereton Estate, 355 Pa. 45, 52) or will be declared void only when it violates the Constitution clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in the mind of the court. See Tranter v. Allegheny County Authority et al., supra.

Testing this statute in the light of the above authorities it is readily seen that the title sufficiently indicates its subject matter. The title is clear enough to give notice sufficient to put a person of a reasonably inquiring state of mind on notice of the general subject mat-

ter, incidental provisions are germane to the legislation as a whole, it does not mislead or entrap, a searcher is clearly put on notice of the contents and there is no substituted matter, entirely disconnected with the named legislation within the folds of the bill.

We therefore hold that the Act of 1939, P. L. 482, is not unconstitutional by reason of its offending section 3 of article 3 of the Constitution of Pennsylvania and we therefore answer the first question in the negative.

Coming now to the second and more perplexing question before the court we have reached the conclusion that defendant's contract with the Montrose Borough School District was not terminated according to law.

Plaintiffs contend that the clear pronouncement in Walker's Appeal, 332 Pa. 488, decided in 1938, rules the situation before us and that this contract was terminated by operation of law since the joint high school district formed by the contracting board and that of Bridgewater must by law elect all teachers or professional employes by a majority of each board forming the joint district, that this defendant was not so hired and therefore is not entitled to a contract with the newly formed joint school district.

It is defendant's contention that his contract should be terminated only for the causes specified and by the method prescribed in the Act of 1939, P. L. 482, supra.

Here again we find two extremely valuable legislative policies in conflict, the one involving the great obligation of the State for public welfare and advancement to provide our youth with comprehensive and modern educational facilities. The other, the growing trend to keep our teaching staff free from politics, the personal whims, caprice, or unfair intervention of school directors and by legislation furnishing security and permanence to this type of endeavor, draw to it professional employes of the highest attainments. Both favor the welfare of the public—one furnishing a bet-

ter system, the other, more efficient professional employes to carry it on; neither should, by judicial pronouncements, be rendered a hindrance to the other wherever it may be avoided. As was said in Walker's Appeal, supra: "The two Statutes (Joint School and Teachers' Tenure) stand together and effect should be given to both. . . . One should not by judicial decision be carried so far as to destroy the clear legislative public policy of the other where that policy equally favors both." (Parenthesis ours.)

One very important feature of the first type of school legislation above described is that set forth in section 1801 of the Act of 1911, P. L. 309, providing for the establishing and maintenance of joint elementary public schools and high schools. Section 1804 of the same act provides inter alia:

"That whatever matter is required by law to be decided by a vote of the majority of all the directors of a school district shall, in a joint school, or department, also be required to be decided by a majority vote of all the directors in each district."

Of this act the Supreme Court in Walker's Appeal, supra, said on page 492:

"This new organization is a distinct separate legal entity from each of the district boards which make it up. The Board of either one of the districts is not the exclusive agency of the state to make contracts with teachers for the new joint schools, as it was for the schools of the old district. The Joint Board elects a president, secretary and treasurer, and may appoint a joint school committee to manage the joint schools. Election of teachers, however, as well as establishment of new departments, shall be by a majority vote of each of the separate districts boards which make up a joint board. Each district is powerless to act alone, nor may the joint board act on a simple majority vote of its members. Thus a teacher must be elected by a majority

of the board members of each of the separate districts to become the ·choice of or be selected by the Joint Board. When the teacher is legally elected, his contract is with the Joint Board, which becomes responsible for its execution."

While this opinion was filed in 1938 and before the enactment or effective date of the Act of 1939, supra, it is still the law of this Commonwealth. There is no provision in the Act of 1939 above, which takes from the new joint board its right to hire under the clear provisions of article XVIII of the Act of 1911 above referred to, and to become a professional employe of a new joint school district, one must be elected and employed by a majority of the board members of each of the separate districts.

The Walker case, however, goes much further in reference to the termination of teachers' contracts in case of consolidation. It was there held:

"When a teacher contracts under the Tenure Act, it is subject to the provision that his contract is to be terminated if the district school in which he teaches is joined with those of another district. Such provision is a condition subsequent, which, when fulfilled, extinguishes the relation between the teacher and the board and terminates the contract. Conditions imposed by the legislative acts affecting the legal relations of the parties to a contract are not uncommon and such contracts are subject thereto."

It was further said by the Supreme Court:

"All legislation must be construed as intending to favor the public interest; when it conflicts with private interests, the public interest to be primarily served is the dominating one, not that of the individual. . . . The Legislature did not intend to confer such privileges and immunities on professional employees as the right to retain their position and pay, without employment in actual work. Furthermore, such a result would

militate against forming joint schools, impeding any improvement in our educational system in this respect."

It must necessarily follow if this ruling in the case of Walker's Appeal, supra, that the contracts of professional employes of the joining districts terminate by operation of law, is still the law of Pennsylvania that this defendant's contract would have been terminated by operation of law when his employing district joined in the consolidation. It it interesting to note that this principle was again approved by the Supreme Court of Pennsylvania in a decision filed one day before the Act of 1939, supra, was enacted. In Langan v. Pittston School District et al., 335 Pa. 395, this court said:

"Appellants contend that Appellee is not within the Tenure Act because her contract is void. It must be conceded that if Appellee had a valid contract to teach, the Tenure Act applies, and if that relationship is to be terminated it must be done according to the provisions for notice, and for the reasons specified in the Act, *or by operation of law.* See Walker's Appeal, 332 Pa. 488." (Italics supplied.)

It is to be borne in mind that at all times in these cases the Supreme Court was referring to the so-called Teachers' Tenure Act of 1937, supra, and returning to Walker's Appeal, the leading case on this subject, we note on page 496 that the court said:

"Appellant urges, in addition, if all the teachers of the two districts cannot be employed in the joint schools, a preference by length of service, under the Tenure Act, should be given to teachers of the old district schools. This might or might not be desirable, depending on the grade of excellence, competency and quality of the instructors on the staff, as compared to the length of service, but this is for the legislature to determine, not the Courts."

Defendant urges that the legislature has now by the Act of 1939, P. L. 482, section 2(*b*), determined seniority rights as well as the method to be pursued in terminating the employment of professional employes by suspension when school districts consolidate.

Examining the above Statute of 1939 we come to the other policy of the legislature in establishing a more modern public school system; that of providing an efficient staff of instructors.

Section 2(*b*) provides:

"Any board of school directors (or board of public education) may suspend the necessary number of professional employes, for the causes hereinafter enumerated": and the third cause is "Consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes." It provides that suspensions to be made shall be determined by the county superintendent of schools or the district superintendent, as the case may be on the basis of "efficiency rank", and for the keeping of rating cards as well as a method of procedure in suspending which we will refer to later.

This act then for the first time expresses legislative intent as to how employes may be suspended when a consolidation takes place. That the contracts of professional employes of a school district are not now automatically terminated when schools consolidate appears certain and this brings us in direct conflict with the opinion in Walker's Appeal. That Walker's Appeal was clearly the law up until the passage of this act may not be successfuly controverted but this clear indubitable legislative mandate should not be disregarded and it supersedes that part of the Walker opinion which holds all contracts of professional employes to be terminated when schools consolidate. To

hold otherwise, would require that we rewrite this clear legislation, which is not the province of this court.

The Act of 1939, supra, has been approved by the Supreme Court. For example, in Bragg v. Swarthmore School District, 337 Pa. 363, this court held that a board of school directors does not have discretion as to compliance with the clear provisions of the Act of 1939 and that a professional employe under a written contract with a school district may be suspended only for the causes enumerated in the Act of June 20, 1939, P. L. 482, and with proper regard to the seniority rights guaranteed him by such act.

In Jacobs v. Wilkes-Barre Township School District, 355 Pa. 449, 452, the Supreme Court again said:

"Where a School Board undertakes to terminate a contract with a professional employee, the procedure set forth in the Act must be strictly followed, and failure on the part of the board to comply therewith renders the attempted dismissal abortive: Swink's Case, 132 Pa. Superior Ct. 107, 200 A. 200."

The Act of 1939, amending section 1205 of the Act of 1911, as previously amended by the Act of 1937, P. L. 213, states that any board of school directors (or board of public education) may suspend the necessary number of professional employes—for the cause of consolidation of schools—when such consolidation makes it unnecessary to retain the full staff of professional employes.

Whenever a board of school directors (or board of public education) decreases the size of the staff of professional employes under the provisions of this act, the suspensions to be made shall be determined by the county superintendent of schools or the district superintendent, as the case may be, on the basis of efficiency rank determined by ratings made in accordance with standards and regulations determined by rating cards

prepared by the Department of Public Instruction. . . . In cases in which suspensions are to be made, professional employes shall be retained on the basis of seniority rights where no differences in rating are found. Seniority rights shall also prevail where there is no substantial difference in rating. In cases where there are substantial differences in rating of those under consideration for suspension seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards hereinbefore referred to: . . . no new appointment shall be made while there are suspended professional employes, who are properly certified to fill such vacancies. . . . Before any professional employe having attained a status of permanent tenure is dismissed or refused reëlection by the board of school directors. . . . The secretary of the school board shall furnish such professional employee with a detailed written statement of the charges upon which his or her dismissal . . . etc., is based.

Here in clear and unmistakable language the legislature has set forth when and in what manner a professional employe may be suspended when school districts consolidate. It is not necessary for us to find justification for the underlying policy which the legislature sought to subserve, although it is quite clear. The legislative policy of offering security and permanency of employment to professional employes of public school districts had been seriously impinged by the principle of law terminating their contracts when school districts consolidated. See Walker's Appeal, supra.

The words of this statute are clear and legislative intent is manifest. That together with the fact that the legislature had the necessary power to effectuate the intent is reason enough for the courts to enforce the statute.

Both the Act of 1911 and its amendment of 1929, P. L. 497, furnishing better educational advantages through consolidation of schools and the Tenure Amendment of 1939, supplying a means of perpetuating a more permanent, efficient and effective teaching body, favor the main object of the State in education, namely to provide an efficient school system. Both policies here represented have reasonable relation to the purpose expressed in article X, sec. 1, of the Constitution of Pennsylvania which makes the cause of education one of the distinct obligations of the State. Neither of the above acts circumscribes the article or abridges its exercise by future legislatures within the field of a thorough and efficient system of public schools.

School districts are not sovereignties; they are but agencies of the State legislature to administer this constitutional duty of maintaining an efficient system of public schools. See Pittsburgh School District v. Allegheny County, 347 Pa. 101, 104; Wilson et ux. v. Philadelphia School District, 328 Pa. 225, 231. It is the duty of the legislature to define through the law the means and methods of maintaining the system.

In construing an enactment of the legislature we revert to the Act of 1937, P. L. 1019. Section 33 directs that words and phrases shall be construed according to the rules of grammar and according to their common and approved usage; section 51 makes it the duty of a court to ascertain and effectuate the intention of the legislature, and section 52: Courts are to presume that the legislature does not intend a result that is absurd, impossible of execution or unreasonable. See Spigelmire v. North Braddock School District, 352 Pa. 504.

Going back to Walker's Appeal and again referring to the Supreme Court's reference to appellant's contention that joint school districts should give prefer-

ence to those possessing seniority rights when employing teachers, we find that the court said:

"This might or might not be desirable, depending on the grade of excellence, competency and quality of the instructors on the staff, as compared to length of service, but this is for the Legislature to determine, not the Courts."

In the Tenure Amendment of 1939, the legislature has determined this identical question in the case of consolidation. It has provided how suspensions may be made when school districts consolidate and methods for determining not only efficiency ratings but seniority rights as well. There is now in the law no other means of reducing the staffs of joining schools than by the explicit and clear terms of this statute.

School districts have, since the enactment of the 1937 statute, been required to dismiss only when the reasons supplied in that act appear and to suspend only when there was a substantial decrease in the number of pupils or students due to natural causes. It was with this in mind that the Supreme Court determined that all professional employes contracts terminated when school districts consolidated, and the further fact that the Act of 1911, supra, provided that all professional employes of joint school districts must be hired or elected by a majority of each board comprising the consolidated districts.

The Teachers' Tenure Acts have been rigidly applied to school districts and they must elect teachers by the affirmative vote of the majority of all the members of the board.

"Two things must enter into the creation of a valid and enforceable teacher's or professional employees contract. (1) The appointment must be made and the salary fixed by the affirmative vote of the majority of all the members of the board of school directors, duly recorded on the minutes, showing how each mem-

ber voted. (2) A contract must be duly signed by the teacher and executed by the president and secretary on behalf of the board, drawn in strict compliance with the action taken by the board and the provisions prescribed by the School Code and its amendments: Hawkins Petition 129 Pa. Superior Ct. 453 . . . if either of these is lacking, there is no valid, enforceable contract": Spigelmire v. North Braddock School District, 352 Pa. 504, 507.

The Act of 1911 and its amendments supply the same procedure for the employing of professional employes by the joint district.

We are of the opinion that the Tenure Act of 1939, supra, may be applied with equal propriety to the joint school district without doing violence to the Act of 1911, which it amended. The legislature knew of the provisions of the act pertaining to the election of teachers and the vote which must be cast before the joint school could employ, and the law pronounced, in Walker's Appeal, and then said that when school districts consolidate any board may suspend the employes rendered unnecessary by such consolidation but that the suspensions shall be made in the manner therein prescribed.

The school districts joining would be in no position to suspend teachers before the joint district had elected and it would afford no protection to a teacher to be suspended without regard to his seniority rights simply because he was not hired by the joint board. To avoid this situation the act was passed.

We are of the opinion that the legislature intended that the joint school district where possible should elect its teachers from those of the joining district and proceed by the method of suspension provided in the act to reduce the staff to the proper number. Such an interpretation will preserve both policies without conflict and will not infringe the principle enunciated in

Walker's Appeal that legislation favoring the public transcends that favoring the individual.

From what we have before us in the agreed facts it appears that this defendant's contract has been terminated without notice and that the provisions of this statute have been completely disregarded. The prevention of such termination prompted the passage of the act we are now called upon to interpret.

We have not been unmindful of the fact that the Act of 1911 provides that all professional employes must be elected by a majority of each board which consolidated; nor of the opinion of the Supreme Court which clearly defined the status of professional employes under the Act of 1937 when consolidation is completed, but these provisions of the Act of 1911 and the law pronounced in Walker's Appeal are superseded by the legislature in the Act of 1939 which provides what now the Supreme Court has said must be followed before the suspension may be legally completed.

It was the duty of the Montrose Bridgewater Consolidated School to proceed to elect from the qualified professional employes of both districts the necessary number of professional employes if possible and suspend those rendered unnecessary by reason of the consolidation in compliance with the terms of the Act of 1939, P. L. 482. There is no provision requiring that all of the teachers be hired as contended by plaintiff.

Situations may arise by reason of the establishment of new departments or courses, necessary dismissals or suspensions, when it may be impracticable or impossible to elect from the combined staffs of the schools presently joining, but under the clear terms of the Act of 1939 the existing staffs must first be legally exhausted.

We therefore hold:

1. That the Act of 1939, P. L. 482, is not unconstitutional in that the title thereof fails to indicate that it is the purpose of the act to in any way affect, limit, control, or modify, or impose additional burdens on joint school districts.

2. That where two school districts consolidate to form a joint high school the contracts of professional employes of each separate district are not now terminated by operation of law. The professional employes rendered unnecessary by reason of such consolidation must be suspended by the joint school district according to the terms of the Act of 1939, P. L. 482, sec. 2(*b*).

3. That the contract of Frank Chilletti with the Montrose Borough School District was not legally terminated.