## Commonwealth v. Johnson

*John M. Ranck*, district attorney, and *John W. Beyer*, assistant district attorney, for Commonwealth.

*W. Hensel Brown*, for defendant.

SCHAEFFER, P. J., March 25, 1949.—Defendant was tried before the court without a jury for bookmaking and was found guilty. He has filed a motion for a new trial on the ground that under the evidence he was

not a bookmaker, but was merely a participant with others in betting with the bookmaker.

The evidence shows that defendant conducts a cafe at Nos. 28-30 West Lemon Street, Lancaster City, Pa. On May 23, 1948, an agent of the Pennsylvania Liquor Control Board visited defendant's place of business and saw two parties place bets with defendant which he telephoned to another party. Defendant took the money for these bets. On June 9, 1948, officers Mosser and Hesser of the Pennsylvania Liquor Control Board visited defendant's place of business and Mosser placed a bet of $1 with defendant on a horse named Danherst running at Delaware Park. Later, on the same day, when Mosser placed another bet with defendant on a horse named Wee Nip, also running at Delaware Park, he was informed by defendant that Danherst had won and defendant paid Mosser $3.05 for his $1 bet. Defendant got the money from his pocket to pay the bet. Officer Hesser placed bets with defendant on three occasions between May 27 and August 4, 1948. On the latter date Hesser placed bets with defendant on horses named Ariel Brigade and Marksman running at Suffolk Downs. It appears that defendant also placed bets for himself in the presence of the officers. Two $1 bills which had been marked by the city police department were found in defendant's possession. They took from defendant two slips of paper with the names of the horses played by Hesser and with other notations thereon. It was proven that the horses referred to in the testimony were engaged in racing at tracks in other States on the specified days.

Defendant was indicted not only for unlawfully receiving bets on horses engaged in racing, but also for assisting in such unlawful bets.

The statutory law of Pennsylvania relating to bookmaking is comprehensive and specific. The Penal

Code of June 24, 1939, P. L. 872, sec. 607, provides, inter alia, that whoever "receives or offers to receive any money, thing or consideration of value, bet or to be bet at any race-track, or assists or abets in any manner in any of the acts forbidden by this section, is guilty of a misdemeanor." In Spigelmire v. School District of Borough of North Braddock, 352 Pa. 504 (1945), Mr. Chief Justice Maxey in construing the Statutory Construction Act of May 28, 1937, P. L. 1019, said: " 'All laws should receive a sensible construction. . . . All legislation must be construed as intending to favor the public interest.' " The public policy of this State with respect to bookmaking in connection with horse racing is set forth in Pennsylvania Publications, Inc., v. Pennsylvania Public Utility Commission et al., 349 Pa. 184 (1944), which decided that public service companies will not be compelled to furnish service "to subscribers who use their telephones to receive and register bets on horse races in violation of law." Mr. Justice Drew in his opinion said: "Betting is not a necessary concomitant of horse racing."

Defendant contends that no gambling paraphernalia was found in his possession and that bookmaking imports some method of recording bets. The statutory law of this State is applicable not only to bookmaking where bets are entered in a book or on sheets of paper, but it covers in the alternative many other illegal acts or practices pertaining to bookmaking, and it includes those parties who assist or abet in any manner therein.

After due consideration the court is of the opinion that the verdict of guilty in this case is warranted by the evidence and the law. Defendant not only received bets on horse races, but paid off a bet.

And now, March 25, 1949, the rule for a new trial is discharged.